Afternoon, Your Honors. May it please the Court, my name is David Kaplan. I represent Deputationer Sebastian Zegrean. Do you wish to reserve rebuttal time? I would like to reserve five minutes of rebuttal time. Thank you very much. You know, this may be a catch-22 situation. It may even appear goofy. But couldn't Congress just say that they wanted to? Just say, well, you can't apply for naturalization if you're in removal proceedings, and that's the end of it. They would have that power to do that. That is correct, Your Honor. And if they want to create a situation in which there's a right without it really meaning anything, I guess they could do that, can't they? That is correct, Your Honor. And I believe that Section 1429 addresses, almost addresses that issue. Section 1429 says that the Attorney General cannot consider applications for naturalization. But at the same time, in that same section, in the proviso of that section, it says it leaves the opening for the Attorney General to terminate proceedings to then consider the application for naturalization. So it would seem like the statute and the regulations are trailing the restructuring of the various agencies. Is the – it's the case, isn't it, that this is a – well, would you agree with the Second Circuit's assessment that this is the – that the law is chasing its own tail, that there's – the way this is set up, the only body that can – that is authorized to speak to the issue of whether there's prima facie a case for naturalization can't speak when a termination proceeding is underway? It is correct under the interpretations of the Board of Immigration Appeals, in Acosta-Hidalgo and in Matter of Cruz. And our position is that those interpretations actually invalidate the regulation and are contrary to the statute. Well, since the – you say they invalidate the regulation and are contrary to statute, there's nothing in the language of 1421A or 1429 that's contradicted by Cruz and Hidalgo, right? No, Your Honor. When you say it has to be, it's because it seems very odd that you would have a statute that's – again, using the language of the Second Circuit, vestigial. But isn't that really – isn't that just the consequence of the later amendment of the statute? They didn't get around to amending the reg, but it is what it is. However, Your Honor, in 2003 when the Department of Homeland Security was created, the regulation not only survived in the section of the regulations that affect the court, but it also survived for some time in the section of the regulations that affect the Department of Homeland Security. There used to be a section, a section 239.2F, that somehow disappeared with no explanation. So right now the immigration courts have a regulation that seems to authorize the immigration judge to terminate proceedings. If there is a prima facie determination that a person is eligible for naturalization – That's based on what Hidalgo said. But if you look at the statute, at section 1429, it says that they cannot even consider a naturalization application. Therefore, how could the prima facie determination even be made? That is a consideration, is it not? Yes, Your Honor, but our position is that the immigration judges do have the authority to make that determination. Based on what? There's nothing in the statute or the regulations that prohibit them from doing that. Where did Cariello go wrong? The Second Circuit case, the 2009 Second Circuit case? I believe if it is read strictly, it would say what Judge Jordan says, which is nobody can make the prima facie determination because the only agency that seems to be allowed to make it can't. I think that's what it's saying, that nobody can make it. And it's stupid, but it is what it is. Somebody's got to do something. I think that's real. And that is our position, Your Honor. And you say it's us. Right now, yes, Your Honor. We do believe – I'm sorry. But if we were to do what you want us to do, we'd have to do it in the face of 35 years of EIA authority. I mean, Maduro Cruz has been on the books since 75. Yeah, but at that time, Your Honor, there was one agency that included the courts, the service side of the Immigration Naturalization Service, and the enforcement side. They took the courts out. Well, at that time, it was reasonable for them to apportion different obligations to different sections of the agency. But as the agent – first, they took the immigration courts out. Then they separated the enforcement from the service section. Eventually, that regulation became – it has been reaffirmed because it was adopted, but it doesn't have a mirror regulation that would allow – the BIA could have, if they had wanted to, could have said in Hidalgo, you know what, Cruz just doesn't work anymore because the whole landscape has changed. But they didn't say that. They said we adhere to that, presumably understanding that there was some kind of a problem in light of the amendments to 1429. Your Honor, the dissenting judge in Hidalgo specifically showed it – specifically stated that it was disturbing to that judge that the Department of Homeland Security could simply, by silence, invalidate the regulation. Well, that's a little bit of a different point than I think the point that's troubling us here. They said in Perriello that the Hidalgo – the BIA in Hidalgo essentially failed to consider the fact that an affirmative communication cannot be made as long as removal proceedings are proceeding. Yes. So that Hidalgo, in that sense, was wrong. And that's – But we're also – I think what's fairly clear here, whatever other confusion there may be – if there's something fairly clear here. Congress did intend that removal proceedings, for lack of a better word, trump naturalization proceedings. That is correct, Your Honor. It is correct, however – Look, aren't we stuck with the BIA's interpretation of its regulations? Isn't that controlling unless we find that it's plainly erroneous or inconsistent? We believe that it's plainly inconsistent with the regulation and that it is also inconsistent with the statute. Well, that would be a great thing for you to speak to with your remaining time. Tell us exactly how the BIA's longstanding 35-year interpretation of the regulation is inconsistent with the regulation and – or is otherwise plainly erroneous. As the agencies currently stand and as the regulatory scheme currently stand, the Board of Immigration Appeals has said the only way the immigration judge can terminate proceeding is if this other agency makes – gives an affirmative statement regarding the prima facie eligibility for an L. However, that other agency doesn't have even a procedure. There is no way, even if it had the authority, it has no procedure to get the prima facie determination. Is that something we have to take Congress as knowing about when it amended 1429? In other words, when Congress did what it did, Cruz had been on the books for decades, right? That's correct. So when it amends 1429 and sets up this block, how can we assume that that was a mistake and not something Congress decided to do knowing full well the state of the law? That is the way in which the regulatory regime was being administered by the agency. Your Honor, respectfully, they also left in 1429 in the proviso a section that specifically speaks to the Attorney General's authority to terminate proceedings for the specific purpose of considering an application for naturalization. I think there is a very important distinction between making a prima facie credibility determination and considering an application for naturalization. Boy, that's good. Help me with that because I have struggled with that. How can you make a prima facie naturalization determination without considering, quote, unquote, the application? By virtue of thinking about it, aren't you, in the ordinary parlance, considering it? Your Honor, an immigration judge could consider the factors that go into making a determination for naturalization. And on its face, it can say that the person is prima facie eligible. That doesn't mean that the judge has to consider the naturalization application. In fact, the judge can't. The statute says that the immigration judge cannot do that. However, immigration judges have extensive experience dealing with the factors that go into making prima facie determinations for naturalization eligibility. Phil Hidalgo has said that there are cases in which we wouldn't have the expertise to make the naturalization determination. And that is the agency speaking, Your Honor. That is the agency speaking. We don't know. We really don't, in all cases, in a lot of areas, have that expertise. But you still have to return to Section 1429. That's right. At the end of the day, they cannot, the immigration judge cannot consider naturalization. The board cannot consider a naturalization application while removal proceedings are pending. There is a distinction that maybe I'm not making myself sufficiently clear, but there is a distinction between an immigration judge being in the middle of removal proceedings, saying, you know, I look at these factors and I find that you're prima facie eligible. That doesn't mean that the person is eligible for naturalization. That determination is run by the- But you have to get rid of Hidalgo, which says you need an affirmative communication. And that is what we're trying to do. Coming from DHS. But DHS has no power to give that communication because of 1429. That's the conundrum. Your point, I guess, I take it is, hey, you Third Circuit judges, tell the BIA Hidalgo is all wrong, right? That is it. And I guess what we're trying to draw from you is what basis would we have for saying that, other than that this is a wacky result? I mean, it's clear that this is not a sensible result. It's clear that the way the whole thing is working is messed up. That's that whole law-chasing-its-tail observation from the Second Circuit. But other than the fact that there's this mess, what is it that would prompt us to say that when the BIA looks at this circumstance, at this exact mess, and says, you know what? We're sticking with Cruz because we, as an agency, don't have the expertise to be making naturalization judgments. That seems to be the point that they're making in Hidalgo. They look at those two wings of the regulation and they say, well, when it comes to humanitarian issues, we're good at that. We can look at that. But when it comes to the first part, naturalization, got no institutional expertise. That's for somebody else. We don't want to weigh in there. Why should we, as a court, say, oh, yes, you do have institutional expertise, and darn it, you're going to go in there? Because that interpretation invalidates the regulation. That's why. And also because a close reading of 1429, even though it's in some ways cryptic, because it refers to the Attorney General, which in some pieces is the Attorney General, but in some pieces it should be the Department of Homeland Security. But that statute specifically says, I believe that a close reading of the statute shows that there is a difference between a prima facie determination and a consideration of the application. Because it specifically says, a decision on, and I'm paraphrasing, but a decision on termination of proceedings shall not be binding on the Attorney General when it makes its decision on naturalization. So it seems to be considering that a judge can do the prima facie determination, give it to the agency that can make the decision on the application, and then if it is approved, proceedings stay as they are. We would have to find that the BIA's interpretation of the regulation is arbitrary and capricious. That is what we're hoping. Inconsistent. Wrong. Plainly erroneous. Really erroneous. That is wrong. Really wrong. Is there a difference between clearly erroneous, plainly erroneous, and loroneous? Those are the issues we wrestle with on the Court. Okay. All right. We've taken you way beyond your time. We'll get you on rebuttal. Thank you, Your Honor. Mr. Conway. Good afternoon, Your Honors. My name is Kevin Conway. May it please the Court, my name is Kevin Conway and I take the voting with some trepidation myself at this time. However, Well, we're going to beat up on you. You know that. I understand that, Your Honor. Well, you don't do that, so we don't have to do that. Well, I think that there is Isn't this crazy? I mean Why has the government allowed this to continue? Yeah. And since it has allowed it to continue, why shouldn't we take the view that's pressed by your opponent that, well, there really is something clearly erroneous going on here? Inconsistent, at least. And plainly erroneous also. Perhaps there is something clearly erroneous, plainly erroneous, and just downright erroneous going on. However, it is not necessarily the Attorney General who is the one who is responsible for that. Congress has in its statute I was going to leave that part out, Your Honor, but since you brought it up, the statute clearly, as Your Honors have already hinted at or have spoken to, clearly prefers or has a preference for removal proceedings, the continuation and termination of removal proceedings over naturalization proceedings. And all of the questions and the points that have been raised have been somewhat responded to by either the board in the Perella decision when it was at the board level, the Perella decision when the Second Circuit talked about it, and also another case that we cited, Hernandez v. Anderson, the Ninth Circuit case, which also upheld or gave deference to the board's interpretation of its own regulation. Yes, but Hernandez, the issue was not presented in Hernandez, the affirmative communication being unable to be given because of Section 1429. That issue was not presented and, therefore, it was not decided by the Ninth Circuit. We've got the Second Circuit case. In the Second Circuit, what might be instructive if Your Honors have not read the board decision, the same issue was raised, why can't the immigration judges and the board make the prima facie determination? Well, first of all, they're precluded from doing so by the statute or at least under their interpretation of it. But the board said in its decision, this board and immigration judges undoubtedly possess the cognitive capacity to determine whether a particular alien is facially eligible to be naturalized under the Act and its instructions. We lack, however, what we lack is the institutional authority to do so. And that's clearly stated in the statute. Now, the regulation that was adopted or was implemented was meant to implement the statute. In it, the point that Hernandez D. Anderson made was that the juxtaposition of the has established language and the other language about the exceptionally meritorious reasons pitted two tenses together against each other. On that point, since the Ninth Circuit in that instance was making a semantic distinction, it was looking at the past pluperfect, I don't remember what the grammatical terms are, but it was looking at that past tense as compared with the present tense in the following phrase and saying this means that the regulation has to mean that the decision about prima facie eligibility needs to be made outside of and prior to the termination proceeding. And the question has come up and been kicked around as I've been thinking about this. How can that be the Ninth Circuit's position when, in fact, the decision on which the regulation is based, the inmate matter of B decision, specifically had the immigration personnel doing it and beyond that in Cruz, which was interpreting the regulation, the court seemed to be looking at it after the termination proceedings had started, the removal proceedings had started. That was one of the worst framed questions I have ever been responsible for. My sincere apologies. Not at all, Your Honor. Let me take one last crack at it. The Ninth Circuit is interpreting the regulation in Cruz, and they say it has to be prior to and outside the context of the removal proceeding that this establishment happens. But in Cruz, that's not the case. The prima facie eligibility for naturalization was being taken up after the commencement of removal proceedings. So given the BIA's own interpretation of it, how can that distinction between past tense and present tense be right? Well, I guess it's when you put the two of them together is what they were saying, because if the regulation was meant to that the immigration judges could make the determination within the removal proceedings, it would have said when the petitioner or the alien establishes as opposed to has established, meaning that it has already happened before the removal proceedings began. But that's not the way Cruz treated it. The very same ‑‑ well, not the very same. I mean, it morphed a little bit over time. The previous number was 242.7A, but effectively it's the same regulation, right? And in matter of Cruz, they're looking at effectively that same language. And when they look at it, there's none of this, oh, it has to be prior to stuff. In fact, in that very case, it was happening after the termination proceedings had begun. As it is in this case. I mean, the removal proceedings had begun in this case already before the application was made for naturalization. Suppose the naturalization proceeding had ‑‑ the application for naturalization had been made first, and the alien got a prima facie determination of eligibility from DHS, and then removal proceedings started. Could he or she take that determination to the immigration judge and say, here I am. I've got the eligibility. It looks like from a reading of the statutory language and the regulatory language and the cases that have determined that, that, yes, I've got this. It didn't happen while there were removal proceedings, so it takes out that prong of 1429. And also I've got the affirmative communication from DHS. So the immigration judge can then say, yes, I am within my rights to terminate these proceedings. It doesn't have to because it's a discretionary call on his part. Although distinctly you did not decide that issue. You explicitly said we're not deciding that issue. Of course, you can run into will DHS sit on the application and sit on the request for determination of prima facie eligibility, or will they give it to you? New area of issue. But that would not be prohibited, apparently, to do it that way. It would not appear to, no, Your Honor. Before removal proceedings start. If removal proceedings have not begun, that's correct. That's what it appears, though. That case hasn't been raised yet, I don't think. What's left of the regulation? If we view it the way the government says, is 1239.2F just rendered meaningless? I don't think it's rendered meaningless. What does it mean? If nobody can take the steps because DHS can't forward a prima facie eligibility comment and nobody else can, then does 1239.2F mean anything at all? Well, I don't know that DHS can't make an affirmative communication. I mean, the court is saying that. I thought that was, in fact, the argument that was being made to us by the government. Consider it. They'd have to consider it to make the prima facie eligibility determination. Barry Yellow says they can't do it. What the government's argument was is that because he had not been given an affirmative communication or because the immigration judge had not received an affirmative communication, that he would – You can put it in the past imperfect if you want, but the upshot is the same, right? It's not only that he didn't. It's that no one could, right? It's impossible. There's no way for it to happen under the construction of the regulation that the government's advocating. It cannot ever be the case that once a removal proceeding starts that there can be a prima facie eligibility showing because nobody can take the step, right? I guess that's probably true. I mean, it talks in terms of the attorney general, which now that those functions are taken over by the DHS. So there's nothing left of 1239.2. Well, there is this. It could be amended such that it says an immigration judge may terminate removal proceedings to permit the alien to proceed to a final hearing on a pending application or petition for naturalization, period. Right? They can just terminate the removal proceeding. The immigration judge. Well, that's the whole point, but – Period. I mean, without all of the things that 1429 prevents from happening. Are you saying that the – Well, let's follow this through. An immigration judge has a removal proceeding before him or her, and he knows there's a naturalization proceeding, application pending. Could not the immigration judge – if we struck this affirmative communication language and the other good stuff. Well, just strike that one language because the immigration judge can certainly find the hardship and those circumstances. They do all the time. Could not the immigration judge terminate the removal proceedings? If the government doesn't like it, they can appeal. But meanwhile, the naturalization proceeding can go forward. So you're saying for a reason other than because the naturalization, just terminate on his own? Yeah. On any motion? I don't know of any regulation that would prevent or statute that would prevent him from terminating an immigration removal proceeding, but that's taking it outside the realm of what this discussion is about. I mean, it's – I'm just trying to think of something that makes sense of where we are. Even if this is a catch-22, even if it's – there's no way out of it, Congress could just say if they wanted to, you can't apply for naturalization if you're in removal proceedings. They don't have that power. And that's basically what the regulation says, the first part of the regulation. Maybe they've done it by a circuitous route. Who really created the problem here, the BIA or Congress? Well, our original point was Congress. And the problem that we're in now is that, as the Second Circuit noted or observed, is that they don't have the – they didn't have the authority to get us out of it. It's up to Congress and Congress to – Really? To – reconsider Hidalgo and say, you know what, we were wrong. Immigration judges – I mean, this all started with matter of B, and we were letting the immigration judge predecessors back then make these sort of determinations. And we think, yeah, we do so have the institutional capacity to deal with this. And so we were wrong. Now when we review 1239.2F, it occurs to us that we do. Immigration judges can make a prima facie judgment about naturalization. And if we do look at it that way, we haven't rendered the regulation meaningless, so that's a better way to look at it. Could they do that? And we do not need an affirmative communication from DHS because they have no power to give it to us. But the statute still – if there's a removal proceeding in place, then the statute still says that you cannot consider the AG – So, but that – you're speaking past Mr. Kaplan's argument. Mr. Kaplan's argument is that that's not considering the application. That's only thinking about whether somebody's prima facie eligible. That's not actually considering the application. It's simply looking at the factors for naturalization eligibility and saying, you know what, I think you'd meet those. Good enough. Now I turn to the humanitarian issues. When you say it's all on Congress to fix this, aren't we in this box in part because of what the BIA itself has done in Cruz and in Hidalgo? But I think that their interpretation of the statute is not unreasonable. Well, that's really the crucial point when it's – the Chevron deference we have to give is to an interpretation of a regulation as long as it's not, quote, clearly erroneous or at odds with the regulation. And wouldn't you say it's sort of at odds with the regulation to render it meaningless? Well, their interpretation of the regulation, as they read the regulation, I don't think that it's clearly erroneous, their interpretation of it. It's rendered meaningless. There's no way out of that box as long as the BIA says IJs don't have the capacity to consider this. Nobody has the capacity to consider it. But the IJs are – the BIA is only following what the statute says because they're not the institution that has the authority to do so because they cannot. Only if you interpret a comment about prima facie eligibility as considering the application for naturalization, right? You'll only get to the point you're describing if you sidestep what Mr. Kaplan is saying when he says there's a reasoned distinction that can be made between considering an application for naturalization and thinking about whether somebody meets prima facie eligibility. I think that you're – I think there probably can be a distinction drawn between, you know, considering an application and making prima facie determinations. If that's true, if that's true that statute – consistent with the statute, you could make that distinction, then doesn't that drive to the conclusion that the BIA's interpretation of the regulation is, in fact, contrary to the regulation because it renders it nugatory? I don't want to – I can't say that that's necessarily the case because – What other case could there be? I'm trying to think of one. Is that really for us to change? It's political. Isn't this political? Isn't this something for Congress and for the BIA? Is this really something the court should be doing? And I think that's the point that was made by the Second Circuit. It's something that the Congress – But is anybody pushing Congress on this? I mean, you're the government. Can't somebody push this to straighten this out? It doesn't seem like a very complicated thing to do. It seems to me there's probably three entities that – as Judge Jordan stated, you know, the BIA or the Executive Office of Immigration Review could maybe take some step. The DHS maybe could take some step and, you know, put something together that would – Congress may like it that way. And I'm sure that's why they did it. Because of that, their preference for removal over naturalization, they want – they constructed it the way that they did. They did it by the back door. It's not the first time that – you know what Kaiser Wilhelm said. If you have a weak stomach, there are two things you should never look into. One is the way they make sausage, and the other one is the way they make laws. And this may very well have been intentional. What's clear here is Congress believes that removal proceedings trump naturalization. Whatever conflicts there are between the regulation and the statute, that's clear, isn't it? Yes, Your Honor. I mean, I don't know. I suppose you can tinker with the regulation, do something. But the reality is that that is what Congress seems to have intended. We've taken you beyond your time, Mr. Conway. Thank you very much, Your Honor. Rebuttal. Briefly. What do you want us to do? What do you want us to do? I mean, you've heard the argument, and I know what you say in your brief. So what do you want us to do? What would be – if you had your choice, what would be the best result for you? The best. We would like the Court to find the interpretation by the Board to be clearly erroneous. The interpretation in Hidalgo? In Hidalgo and in Matter of Cruz, although Matter of Cruz has been questioned severely by many courts. But Matter of Costa Hidalgo, we believe that that's a wrong decision. It's an unreasonable interpretation of the statute and the regulation. There is a way to make a consistent, if not more consistent, interpretation, which is once one makes a distinction between consideration and prima facie determination, there are instances in which the Board makes determinations and applications that are not under its jurisdiction when it's deciding whether to reopen or remand cases. For us to do that, wouldn't we be getting into policy? Isn't it really a matter of policy as to whether or not you can apply for naturalization if you're in removal? Isn't that really a policy decision? I believe that— I may not personally like it, but I'm just saying. It is clear that Congress gave— Congress often does things by the back door. They can't do it by the front door. We all know this. Well, removal proceedings take primacy over naturalization. However, all through all of the changes in the regulations and the statute, there has been a consideration that in some instances, when it is worth it, when you have an alien that establishes extraordinary situations, the judge should be able to terminate proceedings to consider the naturalization application. So I do agree that a bright-line determination would be a question of policy. However, this is more a question of equity. The court is looking at that one particular person who is both removable and eligible for naturalization, and he's making a decision, you know? Well, when you say he's both, you're assuming he's eligible for naturalization. The problem is nobody can say that. Who may be eligible for naturalization. That's where the prima facie determination comes in. What happens then? Then the case gets terminated by the immigration judge. The person gets his or her application considered by the agency. You're effectively saying that if the person may be eligible for naturalization and essentially could meet the requirements of asylum or something like that, you know, it's humane, there are really exceptionally important reasons, then you can terminate the removal proceeding basically so he or she can go to naturalization. But to apply. That doesn't mean that the person gets granted the application. He's already applied, I assume. Well, yes. If not, there wouldn't be a termination of proceedings. Wouldn't we be considered activist judges if we did something like that? Isn't that supposed to be bad? Even – Just trying to make a reasonable interpretation of the statute and the regulations. I don't know how that would be activist. Okay. They say an activist judge is doing something that the other guy doesn't like. I think that's the definition. All right. Is there anything, any other questions? I think we understand. Thank you very much. Thank you very much. The case is very well argued. We'll take it under revised.